TIMOTHY COURCHAINE
United States Attorney
District of Arizona
M. BRIDGET MINDER
Assistant U.S. Attorney
Arizona State Bar No. 023356
GLENN B. McCORMICK
Assistant U.S. Attorney
Arizona State Bar No. 013328
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: bridget.minder@usdoj.gov
Email: glenn.mccormick@usdoj.gov

JOHN A. EISENBERG
Assistant Attorney General
National Security Division
JOSEPH N. KASTER
Illinois State Bar No. 6207197
Trial Attorney
Counterterrorism Section
950 Pennsylvania Ave, NW
Washington, DC 20530
Telephone: 202-514-2805
Email: joseph.kaster@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-12-01263-PHX-ROS |
|---|---|
| Plaintiff, | |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| Ahmed Alahmedalabdaloklah, | |
| Defendant. | |

Over a span of several years, the Defendant performed an essential conspiratorial role in the design and manufacture of remote-controlled, improvised explosive devices (IEDs) which were used by an Iraqi insurgent group to conduct lethal attacks against U.S. military personnel. His electronics expertise was indispensable to the group's deadly aims: without IED components, there are no IED attacks. After a thorough consideration of the

evidence presented at trial, extensive briefing by the parties, and presentations by counsel, this Court originally imposed a life sentence. A life sentence remains consistent with, and warranted by, the Defendant's crimes of conviction, the Sentencing Guidelines, and the § 3553(a) factors upon a remand for resentencing occasioned by a subsequent change in the law (which affects only two of the four conviction counts). Therefore, the United States respectfully requests that this Court impose the same judgment it rendered in 2018 on the remaining counts of conviction: a life sentence on Count One and 20 years (concurrent) on Count Two.

## PROCEDURAL AND FACTUAL BACKGROUND

Mindful that the Court is very familiar with the extensive trial record and previous sentencing papers submitted by the parties, the government highlights only a few of the salient procedural and factual points preceding this resentencing.

On March 16, 2018, a jury found the Defendant guilty on four counts related to his involvement in a conspiracy to attack United States military personnel using IEDs in support of the 1920 Revolution Brigades (the "Brigades"), a Sunni insurgent group in Iraq. *See*, *e.g.*, Doc. 231 (Second Superseding Indictment); Doc. 923 (Jury Verdict).

As more fully set forth in the government's original sentencing memorandum and related briefing,[1] the evidence at trial demonstrated that the Brigades were among the more prominent Sunni insurgent groups in Iraq during the height of the group's operational activities, from approximately 2003 to 2007. *See also United States v. Alahmedalabdaloklah*, 94 F.4th 782, 796-800 (9th Cir. 2024). The Brigades' objective of resisting what they viewed as the "U.S. occupation" resulted in a widespread campaign of violent attacks against U.S. forces by the Brigades in an attempt to force the U.S. to withdraw its assistance to the fledgling Iraqi government. The group's principal tactic for attacking U.S. forces was the use of roadside IEDs.

---

[1] *See* Government Response to Defendant's Motion for a Downward Variance and Sentencing Memorandum at 9-14 (Doc. 994) (summarizing witness and expert testimony, critical emails, and physical evidence); *see also* Response to Defendant's Objections to the Draft Presentence Report (Doc. 991).

The evidence at trial further showed that the Defendant played an integral role in this conspiracy and supported the goals of the Brigades. Possessing a college education and technical expertise, the Defendant used his knowledge of electronics to assist the Brigades in devising and using sophisticated, remote-controlled IEDs. Beginning when he was in his late twenties, the Defendant's involvement spanned numerous years and continued even after he had relocated from Iraq to China. Without question, the Brigades' IED campaign had devastating consequences for U.S. military personnel and equipment.

On November 7, 2018, the Court sentenced the Defendant to life imprisonment plus 30 years. *See* Judgment (Doc. 1008). The sentence on Count One was a term of life and the sentence on Count Two was 240 months. *Id*. After sentencing, the Defendant appealed his convictions (but not his sentence) to the Ninth Circuit.

On appeal, the government agreed the Defendant's convictions on Counts Three and Four, the 'crime-of-violence' charges, could not stand in light of a subsequent Supreme Court decision, *United States v. Davis*, 588 U.S. 445 (2019), which invalidated as unconstitutionally vague the residual clause in 18 U.S.C. §§ 924(c), (o). The Ninth Circuit otherwise completely affirmed the Defendant's remaining convictions against a variety of legal challenges. *See Alahmedalabdaloklah*, 94 F.4th at 796 ("Even reviewing the record cumulatively, this [the dismissal of Counts Three and Four] is the only error that warrants remand."), *cert. denied*, 145 S. Ct. 770, 220 L. Ed. 2d 272 (2024). The convictions affirmed by the Ninth Circuit – conspiring to use weapons of mass destruction (Count One) and damage U.S. government property (Count Two) – reflect the full gravamen of the Defendant's criminal course of conduct. After extensive appellate litigation, the Ninth Circuit issued its Mandate on January 7, 2025, and remanded the case for resentencing. *See id*. at 796.[2]

---

[2] The Ninth Circuit also noted that a small typographical error regarding the statute for Count One should be corrected in the new judgment. *Id*. at 796, n.2.

The dismissal of Counts Three and Four, as required by *Davis*, does not change the statutory maximum sentence, the Sentencing Guidelines calculation, or the § 3553(a) analysis. Nor does it diminish the extremely serious nature of the Defendant's illegal conduct: for more than five years, the Defendant was a vital member of a conspiracy which attacked U.S. military members in Iraq, using his technical expertise to supply thousands of electronic parts used to detonate bombs targeting U.S. forces. A review of the record anew for resentencing confirms that the original sentence on Counts One and Two remains appropriate and necessary to comply with purposes of 18 U.S.C. § 3553(a)(2). As was the result in 2018, a thorough, careful, and fair consideration of the § 3553(a) factors once more demonstrates that a term of imprisonment of life is a just and appropriate sentence.[3]

## ARGUMENT

### I. The Presentence Investigation Report (PSR) correctly calculates the advisory Guideline sentence and recommends a life sentence.

The new PSR (Doc. 1129) largely mirrors the 2018 PSR (Doc. 1002). As before, the Defendant's adjusted offense level is 51, which is treated as a total offense level 43. PSR ¶¶ 24-34; 2018 PSR ¶¶ 23-32. Under § 3A1.4(b), the Defendant's criminal history category is VI. PSR ¶ 39; 2018 PSR ¶ 38. Regardless of criminal history, however, the Guideline sentence for offense level 43 is life imprisonment.

The statutory maximum sentence for Count One is life imprisonment. 18 U.S.C. § 2332a(a). The statutory minimum sentence for Count Two is five years and the maximum is twenty years. 18 U.S.C. § 844(f)(1) and (n).[4]

The PSR recommends the statutory maximum sentence on both counts: a life sentence on Count One and 240-months imprisonment on Count Two, with the sentences

---

[3] Although the Defendant did not directly challenge the Court's Sentencing Guidelines calculation or ultimate sentence on appeal, his effort to have the case reassigned for resentencing was rejected by the Ninth Circuit. *Alahmedalabdaloklah*, 94 F.4th at 846 (finding "the record demonstrated that the district court was thorough, careful, and fair").

[4] Count Three had a statutory minimum sentence of 30 years and a statutory maximum sentence of life imprisonment, to run consecutive to all other counts. Count Four had a statutory maximum sentence of life imprisonment. *See, e.g.*, 2018 PSR at 15.

to run concurrently. PSR at 15. The government agrees with the PSR's recommendation and Sentencing Guidelines calculation. PSR at 15 and ¶¶ 24-39.

## II. Under the § 3553(a) factors, life imprisonment is a just sentence.

After "an individualized determination based on the facts," *see United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (*en banc*), a life sentence in the present case is necessary to comply with the § 3553(a) factors.

First, the Defendant's history and characteristics overall do not weigh against a life sentence.[5] As this Court noted in 2018, the Defendant appears to have some positive attributes, including his advanced education, a family he cares about, and his prior status as a business owner. *See* Reporter's Transcript of Sentencing Proceedings on November 7, 2018 ("SE Tr.") at 48, 51 (Doc. 1032). But as this Court found, none of these positive attributes militate convincingly in favor of a lower sentence. *Id*. at 51. The Defendant used his education and technical expertise not to innovate or provide for his family but to commit very serious crimes. *Id*. at 48. Further, the Defendant "should have considered his family before he engaged in this criminal activity." *Id*. at 51; *see also United States v. Ghanem*, 143 F.4th 1114, 1123-1130 (9th Cir. 2025) (affirming district court's upward deviation from Guidelines range of 78-97 months to a 360-month sentence, where district court determined harm to national security and foreign policy interests outweighed defendant's medical conditions and support of family members). In addition, the Defendant's status as a business owner suggests his crimes were not motivated by poverty or desperation but by greater financial gains and support for the goals of the Brigades. In fact, posing as an electronics storeowner facilitated the Defendant's guise to essentially hide his IED electronics factory in plain sight. Instead of utilizing his technical knowledge and expertise for legitimate, peaceful ends, he devoted his skills to an IED conspiracy.

Second, the nature and circumstances of the Defendant's offense weighs strongly in favor of a life sentence. Defendant designed, made, and supplied necessary electronic parts

---

[5] Less is known about the Defendant's history and circumstances as he declined to participate in a presentence interview. PSR ¶ 44.

- 5 -

for IEDs to be used in a lengthy campaign of violent attacks against U.S. military personnel in Iraq. *See* PSR ¶¶ 8-9, 15. As the expert testimony at trial explained, many of these components entailed sophisticated electronics, including re-purposing available consumer devices, using programmable microchips, and designing safe-to-arm switches. The Defendant's involvement was quite literally "hands-on" as evidenced, for example, by a fully completed IED triggering device and numerous documents which included his fingerprints. Indeed, one "project box" for an IED found at the Amiriyah IED cache that had his latent prints contained a DTMF-11 custom circuit board with *five* independent outputs – providing unique functionality that could be used for the detonation of five IEDs.[6]

The Defendant's offense was not only sophisticated, it also was intentional and long running, continued across multiple countries, and involved a huge volume and variety of electronic parts and technical acumen. As summarized by this Court at the initial sentencing and in the PSR, the evidence during the seven-week trial showed:

- The Defendant "knew these [electronic parts] were used and meant to be used for the purpose of detonating IEDs in the battlefield where the United States was involved" (SE Tr. at 52, Doc. 1032);
- The Defendant played a "vital function" in the conspiracy to attack U.S. forces because of his technical expertise (*id*. at 48-50);
- The Defendant designed, made, and supplied electronic parts for IEDs for more than five years (PSR ¶ 8);
- The Defendant continued supplying these parts even after he left Iraq and moved to China (PSR ¶ 15); and
- The Defendant supplied parts for thousands of IEDs (PSR ¶¶ 16-17).

Third, a life sentence is necessary to reflect the seriousness of the Defendant's offense, promote respect for the law, and provide just punishment. The seriousness of the

---

[6] This was established during testimony on Trial Day 13 from Major Thomas Hickey, Dan Lien, and Steve Malloy and trial exhibits 207a-g and 2010. *See* Reporter's Transcript of Jury Trial Day 13 A.M. Session at 1974 (Doc. 854); Reporter's Transcript of Jury Trial Day 13 P.M. Session at 2030-2034 & 2087-2098 (Doc. 855).

Defendant's offense cannot be overstated, especially his conspiracy to use weapons of mass destruction (Count One, § 2332a). When it enacted § 2332a, Congress made an express finding "that the use and threatened use of weapons of mass destruction … gravely harm the national security and foreign relations interests of the United States, seriously affect interstate and foreign commerce, and disturb the domestic tranquility of the United States." H.R. CONF. REP. 102-405, 46. To address this grave harm to national security, Congress specifically authorized a life sentence for its violation. 18 U.S.C. § 2332a(a); *see also* SE Tr. at 52 (Doc. 1032) (stating "Congress has made this a very serious offense"). The Defendant's conduct, as part of the Brigades' campaign to attack U.S. military personnel, exemplifies the grave harm to U.S. national security posed by weapons of mass destruction that Congress sought to punish and deter with § 2332a.

Fourth, the need for the sentence to afford adequate deterrence balances strongly in favor of a life sentence. In this case, both specific and general deterrence are concerns. As for specific deterrence, this Court found that the Defendant would continue his offense if released: "I don't believe that [the Defendant] has learned his lesson. I do not believe that if he was not given life in prison that he would not repeat this offense." SE Tr. at 51 (Doc. 1032); *see also United States v. Jayyousi*, 657 F.3d 1085, 1117 (11th Cir. 2011) (perpetrators of terrorist acts are "unique among criminals in the likelihood of recidivism, the difficulty of rehabilitation, and the need for incapacitation"). Nothing has occurred during the intervening seven years to alter this Court's determination. The Defendant still has not expressed any remorse for his conduct, nor admitted his responsibility for his role in the Brigades' IED campaign.[7]

As for general deterrence, this Court stated in 2018: "the maximum term of imprisonment is warranted here to ensure that the occupation forces, wherever they are, in the Middle East or anywhere else, do not face any type of criminal activity where they face the possibility of being murdered." SE Tr. at 52 (Doc. 1032). As the overall security

---

[7] The Defendant's personal preference not to attend his resentencing in person also suggests a continued absence of remorse and a lack of respect for the law.

situation in Iraq and elsewhere in the Middle East remains volatile, the Court's previous statements about deterrence remain as valid and compelling today as when initially expressed.

Finally, a life sentence is necessary to avoid unwarranted sentence disparities and is entirely consistent with other defendants who can be considered similarly situated. Application of § 3553(a)(6) is meant to promote uniformity in sentences nationally among defendants with similar records and convicted of similar conduct. *See*, *e.g.*, *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). Although the Defendant's offense conduct includes several unique aspects (*e.g.*, the sheer volume of IED components), two lines of authority confirm the correctness of the Court's original determination that a life sentence was appropriate under the circumstances here and that such a sentence again is necessary "to avoid *unwarranted* sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6) (emphasis added); *United States v. Friend*, 2 F.4th 369, 383 (4th Cir. 2021) (underscoring that § 3553(a)(6) precludes unwarranted disparities).

The first line of authority demonstrates that courts have not infrequently imposed life sentences on defendants – even first-time offenders – who have been convicted of participating in terrorism plots and conspiring to use similar weapons of mass destruction, whether consummated or not. *See*, *e.g.*, *United States v. Hamidullin*, 888 F.3d 62, 65 (4th Cir. 2018) (affirming multiple life sentences for conspiring to use a weapon of mass destruction, kill an officer or employee of the United States, and destroy U.S. aircraft in Afghanistan); *United States v. Kadir*, 718 F.3d 115, 125-26 (2d Cir. 2013) (affirming life sentences for two defendants who plotted to destroy infrastructure at JFK airport); *United States v. Dire*, 680 F.3d 446, 476-77 (4th Cir. 2012) (affirming sentences of life plus 80 years for five Somali pirates who attacked a Navy ship); *United States v. Suarez*, 893 F.3d 1330, 1337-38 (11th Cir. 2018) (affirming life sentence for defendant convicted after an undercover operation for planning to detonate a bomb on a crowded beach).

The second line of authority demonstrates that individuals involved in such plots who plotted attacks or provided essential weaponry but did not carry out the actual attacks also received significant sentences, including life imprisonment. *See*, *e.g.*, *United States v. Hammadi*, 737 F.3d 1043, 1044-45 (6th Cir. 2013) (affirming life sentence for defendant who conspired to send money and surface-to-air missiles to insurgents in Iraq and to murder a U.S. military member);[8] *cf. United States v. Ressam*, 679 F.3d 1069, 1088-1095 (9th Cir. 2012) (holding district court's 22-year sentence for defendant who plotted to detonate a bomb at the Los Angeles Internation Airport was substantively unreasonable, notwithstanding defendant's extensive cooperation with the government, because (among other reasons) "[t]he crimes that [defendant] sought to commit were horrific" and "would have resulted in many deaths and injuries").

Given the vital role played by the Defendant in a long-running and sophisticated conspiracy to use deadly IEDs against U.S. military personnel and property, coupled with his refusal to express remorse or accept any responsibility for his actions in the subsequent years, both the Sentencing Guidelines and the full record before the Court call for a sentence of life imprisonment. *See United States v. Alford*, 89 F.4th 943, 953 (D.C. Cir. 2024) ("The best way to curtail unwarranted disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly.") (internal quotations and citations omitted).

## CONCLUSION

The life sentence initially imposed by the Court in 2018, and the Guideline sentence of life which has been recommended again by the Probation Office, remains the appropriate one given the Defendant's criminal course of conduct and the relevant factors under 18

---

[8] *See also*, *e.g.*, *United States v. Ghanem*, 143 F.4th 1114, 1129-30 (9th Cir. 2025) (affirming 30-year sentence for defendant who, as part of an undercover sting operation, sought to export military equipment from the United States to Libya); *United States v. Al Farekh,* 810 F.App'x 21, 27 (2d Cir. 2020) (affirming 45-year sentence for individual who conspired with al Qaeda to prepare and detonate a vehicle-borne IED against a U.S. military base in Afghanistan).

U.S.C. § 3553(a). For all of these reasons, the government respectfully requests the Court impose a life sentence on Count One and twenty years on Count Two to run concurrently.

Respectfully submitted this 25th day of November, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ M. Bridget Minder*
M. BRIDGET MINDER
GLENN B. McCORMICK
Assistant U.S. Attorneys

JOSEPH N. KASTER
Trial Attorney
Counterterrorism Section
National Security Division

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2025, I electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Jon M. Sands and Jami Suzanne Johnson
*Attorneys for Ahmed Alahmedalabdaloklah*

 *s/Theresa Hanson*
U.S. Attorney's Office